**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-403-2** |
| **HONG KONG SPIRIT SHIPPING & TRADING LIMITED** | : | |

# GOVERNMENT'S GUILTY PLEA MEMORANDUM

## I. BACKGROUND

The defendant, Hong Kong Spirit Shipping & Trading Limited, is charged by information with two counts of failing to maintain an accurate Oil Record Book for the Motor Vessel MSC Samira III ("M/V MSC Samira III" or "Vessel"), in violation of 33 U.S.C. § 1908(a). The parties have entered into a written guilty plea agreement in which Hong Kong Spirit will enter a plea of guilty to both counts of the information. A guilty plea hearing is scheduled for Friday, August 28, 2026, at 10:30 a.m. A copy of the defendant's guilty plea agreement is attached here as "Exhibit A."

## II. ELEMENTS OF THE OFFENSE

To obtain a conviction under 33 U.S.C. § 1908(a), the government must prove beyond a reasonable doubt that:

1. The vessel at issue was a ship of 400 gross tons or greater;
2. the defendant, as a person in charge of operations for which entries are required to be made in an Oil Record Book, failed to record in the Oil Record Book the flushing of the Oil Content Monitor with water during the operation of the Oil Water Separator and the subsequent discharge of oily waste from the vessel into the sea; and
3. the defendant knowingly failed to maintain an accurate Oil Record Book;
4. the failure to maintain an accurate Oil Record Book occurred within the Eastern District of Pennsylvania.

In addition to the required elements of the offense, in order to find Hong Kong Spirit guilty of these charges, the government must prove each of the following three elements:

1. That the offense charged was committed by, among other things, an agent or employee of Hong Kong Spirit;
2. in committing the offense, the acts were committed within the course and scope of the employment or agency given; and
3. the acts were committed with the intent to benefit Hong Kong Spirit.

Third Circuit Model Criminal Jury Instructions § 7.06.

## III. MAXIMUM PENALTIES

The statutory maximum penalty for a violation of 33 U.S.C. § 1908(a) by an organization is as follows for Counts 1 and 2: five years' probation, with one-year mandatory minimum if imposed; a fine of $500,000 per count of conviction, or twice the gross gain or loss caused by the offense; and a $400 special assessment per count of conviction.

## IV. FACTUAL BASIS FOR PLEA

If this case were to proceed to trial, the United States would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

Defendant Hong Kong Spirit Shipping & Trading Limited ("Hong Kong Spirit") was a company with an office in Monrovia, Liberia, and the registered owner of the M/V MSC Samira III. Defendant MSC Shipmanagement Limited ("MSC") was a ship management company with an office in Limassol, Cyprus. MSC operated a fleet of sea-going vessels, including the M/V MSC Samira III.

The M/V MSC Samira III was a 27,114 gross ton ocean-going cargo ship that was registered in Liberia and had an International Maritime Organization number of 9434462. The vessel transported cargo between the United States, Central and South America, and Africa.

At all relevant times, the M/V MSC Samira III had an Engine Department headed by a Chief Engineer, who was assisted by a Second Engineer. Engine Department crew members were required to carry out orders from any crew member of superior rank. All members of the Engine Department crew were agents or employees of MSC and Hong Kong Spirit and acted within the scope of that agency or employment and for the intended benefit, at least in part, of MSC and Hong Kong Spirit.

The Chief Engineer on board the M/V MSC Samira III had overall responsibility for the operation of the Engine Department, including the supervision of daily operations, formulation and implementation of engine room procedures, and verification that all systems, including the Oil Water Separator, a pollution prevention device required by law, were properly functioning. The Second Engineer was responsible for the day-to-day execution of the Chief Engineer's orders and had authority to direct other subordinate Engine Department crew members.

The Master of the M/V MSC Samira III was responsible for maintaining an Oil Record Book that accurately recorded, among other things, the transfer, disposal, and discharge overboard of oil residue, oil and oily mixtures, and oily bilge water on board the vessel. The Oil Record Book was required to be maintained on board the vessel and be readily available for inspection at all reasonable times. The Chief Engineer and the junior engineers, as the persons in charge of the operation, were required to sign the entries documenting the operations of lower-level crew members that were required to be recorded in the Oil Record Book. On the M/V Samira III, the general practice was for the Chief Engineer to make entries in the Oil Record Book and present entries to the junior engineers for signature and affirmation of the information entered.

On multiple occasions, from at least as early as June 2024 through in or about September 2024, senior engineering officers, including the Second Engineer, directed and authorized lower-level crew members to transfer machinery space bilge water into the Sewage Holding Tank. The crew used portable pumps and hoses (hereinafter "the bypass equipment") to suction oily bilge water from the Bilge Holding Tank into the Sewage Holding Tank, which was located on an upper floor of the Engine Department. The crew members then used the Sewage Holding Tank's overboard discharge valve to release the oily bilge water into the sea without processing it through the vessel's Oil Water Separator. The bypass equipment itself contained no filter or similar pollution prevention device. None of these transfers or discharges were recorded in the Oil Record Book, despite such entries being required.

On multiple occasions between in or about September 2024 and in or about January 2025, two successive Second Engineers also used fresh water to trick the Oil Content Monitor. To conduct the operation, the Second Engineer attached a hose to the input of the Oil Content Monitor and ran fresh water through the Oil Content Monitor while the Oil Water Separator was running. This prevented the Oil Content Monitor from sampling the effluent of the Oil Water Separator. Instead, the Oil Content Monitor was provided with fresh water to sample. Therefore, the oil content of the Oil Water Separator effluent was unknown. Accurate Oil Record Book entries are required by law to be made when machinery space bilge water is discharged overboard. An exceptional discharge of oil or oily mixture is also required by law to be recorded in the Oil Record Book.

During the operations of the Oil Water Separator when the Oil Content Monitor was supplied with fresh water, the Second Engineer ordered a junior engineer to remove the secondary stage filters from the Oil Water Separator. This enabled the Oil Water Separator to discharge effluent faster.

Both Second Engineers, including Mikhail Tsurikov, charged elsewhere, had a duty, as a person in charge of Oil Water Separator operations, to sign accurate entries in the Oil Record Book

recording the use of the Oil Water Separator and the manner it was used. Both Second Engineers knew that the above-described discharges of oily waste were required by law to be recorded in the Oil Record Book and signed by the person or persons in charge of the operation. Despite being responsible, required to do so, and knowing these entries were required to be accurately recorded, the Second Engineers signed entries in the Oil Record Book that failed to accurately record the above-described discharges. The Master of the M/V MSC Samira III presented the Oil Record Book, with the false entries, to the U.S. Coast Guard on January 9, 2025, and on January 27, 2025, in Philadelphia, Pennsylvania. The Master and the Second Engineers were agents or employees of both MSC and Hong Kong Spirit, acted within the course and scope of that agency or employment by performing these acts, and for the intended benefit of MSC and Hong Kong Spirit.

The government respectfully submits that the information summarized above provides a factual basis for defendant MSC's guilty plea.

## V. **PLEA AGREEMENT**

The parties have executed a plea agreement that will be presented to the Court during a hearing regarding entry of the guilty plea. The agreement includes a supplement to be filed under seal.

## VI. CONCLUSION

The government requests that the Court conduct a hearing under Federal Rule of Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Angella N. Middleton*_____________
ANGELLA N. MIDDLETON
Assistant United States Attorney

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

*/s Lauren D. Steele*_________________
LAUREN D. STEELE
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Guilty Plea Memorandum has been served by email on:

Tanner Honea, Esq.
Tanner.Honea@klgates.com
*Counsel for MSC Shipmanagement Limited and for Hong Kong Shipping & Trading Limited*

*/s Lauren D. Steele*
LAUREN D. STEELE
Trial Attorney

DATED: August 26, 2026